DICK F. HADEN, APPELLANT, v. HOCKENBERGER & CHAMBERS COMPANY, A CORPORATION, ET AL., APPELLEES.
DONALD HADEN, THROUGH AND BY HIS FATHER AND NEXT FRIEND, DICK F. HADEN, APPELLANT, v. HOCKENBERGER & CHAMBERS COMPANY, A CORPORATION, ET AL., APPELLEES.
228 N. W. 2d 883

Filed May 8, 1975. Nos. 39767, 39768.

Robak & Geshell, for appellants.

Jewell, Otte, Gatz & Collins, Walker, Luckey, Whitehead & Sipple, Noyes W. Rogers, Walter, Albert, Lein-

inger & Grant, and Moyer & Moyer, for appellees.

Heard before WHITE, C. J., BOSLAUGH, and McCOWN, JJ., and LYNCH and BURKE, District Judges.

LYNCH, District Judge.

Dick Haden and his son Donald filed separate actions against the defendants for damages resulting when Donald dived from a parked drag line into an artificial lake.

The defendants filed separate motions for summary judgment in each case which were submitted to the trial court on the pleadings and depositions of Donald Haden, his companion, Donal Geis, and president of defendant Hockenberger & Chambers Company, Willis M. Ferguson. The motions were sustained, the plaintiffs appealed, and the cases were consolidated for presentation to this court.

The facts which are clear and uncontroverted are as follows: Hockenberger & Chambers Company owned a development area which included a lake. Gerald Loeffler, doing business as Loeffler Construction Company, had a drag line parked adjacent to the lake. At the time of the accident Donald Haden was 16 years, 9 months old, a senior in high school, who participated in track, was active in the Civil Air Patrol, worked and managed his own money, drove the family automobile, and was considered of average intelligence. On September 17, 1972,. Donald and Donal Geis went to the lake, waded in the water, checked its depth, and climbed to the cab of the drag line from where Donald plunged head first into the water, suffering severe injuries. The two had been swimming in the lake several times during the summer, there were no foreign objects on the lake's sandy bottom, it was not practical to fence the area, "No Trespassing" and "Keep Out" signs had been posted, and Mr. Ferguson had received a request to fence the lake. Donald and his companion were trespassers.

The plaintiffs contend that the pond and drag line, individually and together, constituted an attractive nui-

sance, and that the defendants were negligent in failing to anticipate that children would be attracted to dive from the drag line into the lake and in failing to warn and to adopt adequate safety precautions.

The defendants denied that the attractive nuisance doctrine applied in these cases, alleged that the sole proximate cause of the accident was the negligence of the plaintiff, Donald Haden, and contended further that the only duty owed to him as a trespasser was to refrain from willful or wanton negligence.

The plaintiffs correctly argue that this court has adopted the variously referred to "attractive nuisance," "turntable," "infant trespasser," or "special rule" doctrine as enunciated in Restatement, Torts 2d, § 339, Artificial Conditions Highly Dangerous to Trespassing Children. See Gubalke v. Estate of Anthes, 189 Neb. 385, 202 N. W. 2d 836. This rule imposes liability on property owners for injury to trespassing children when five requirements are satisfied. Three of the essentials are, in substance, (1) the condition is one which the possessor realizes will involve an unreasonable risk of death or serious harm to children; (2) the children do not realize the risk involved in coming within the area; and (3) the burden of eliminating the danger is slight compared with the risk to children involved.

We quote from 62 Am. Jur. 2d, Premises Liability, § 179, p. 457: "The rule that a child may not recover for injuries under the special rule where he was clearly aware of the danger involved applies especially in the case of injuries suffered by a child old enough to be aware of the dangers of swimming, diving, or other activities in or about water." Also, at § 174, p. 450: "It has also been reasoned that the special rule should not be extended to ponds, * * * since they are, in fact indispensable for the maintenance of life and property and are practically impossible to render harmless." And, at § 169, p. 444: "The attractive nuisance doctrine has frequently been said not to apply to common or ordinary

objects, on the ground that while such objects may be attractive to children they are not inherently dangerous, * * *." At p. 445: "The attractive nuisance doctrine will generally not be applied to useful machinery in a static condition. And moving machinery has been held not to be an attractive nuisance in the absence of evidence that such machinery was enticing to young children."

As early as Richards v. Connell, 45 Neb. 467, 63 N. W. 915 (1895), this court held in affirming a dismissal on demurrer: "The owner of a vacant lot upon which is situated a pond of water or dangerous excavation is not required to fence it, or otherwise insure the safety of strangers, old or young, who may resort to said premises not by invitation, express or implied, but for the purpose of amusement or from motives of curiosity." Another case dismissed on demurrer in the trial court and affirmed on appeal is Spence v. Polenski Bros., Schellak & Co., 110 Neb. 56, 193 N. W. 101 (1923), in which it was stated at pages 60 and 61: "By the great weight of decisions, our own included, the doctrine announced in the Turntable cases has never been carried to the extent of including a pond within its scope."

It is the opinion of this court that a person on the premises of another, without the permission of the owner, who is of sufficient age, mentality, experience, and ability to observe, realize, and avoid a particular danger or peril is in fact and law an adult trespasser and cannot recover under the special rule pertaining to children. It is also the view of this court that the attractive nuisance doctrine has no application to pools, ponds, or other bodies of water, artificial or natural, where there exist no unusual traps or hazards; nor does it apply to useful machinery in a static condition unless there is evidence that the machinery is especially enticing and inherently dangerous to indiscriminating children of tender years.

The established evidence excludes, as a matter of law, the plaintiffs and the premises from the special rule per-

mitting recovery of damages by trespassers without proof of willful or wanton negligence. It follows that no material issues of fact remain, therefore the judgments of the District Court sustaining the motion for summary judgment are affirmed.

AFFIRMED.