## CENTRAL TRANSFER AND STORAGE CO v FROST

Ohio Appeals, 2nd Dist, Franklin Co

No 2509. Decided April 25, 1935

B. B. Bridge, Columbus, and Paul R. Gingher, Columbus, for plaintiff in error.

R. L. Topham, Columbus, and Howell, Roberts & Duncan, Cleveland, for defendant in error.

594

## OPINION

By BARNES, J.

### FIRST GROUND OF ERROR

1. The court erred in permitting the interrogation of the jurors on the voir dire examination.

The record discloses that during the impaneling of the jury, counsel for plaintiff, over the objection of counsel for defendant, interrogated the members of the panel as to whether or not any member of the panel was employed by the State Mutual Automobile Insurance Company; if they owned any stock in that company; if the family or relatives of any member of the panel were either employed by that company or owned stock therein; if any of the members of the panel were employed by any automobile liability insurance company; if any member of the panel owned any stock in any company that writes automobile liability insurance.

Counsel for the defendant saved his record by objecting to all of the interrogations and upon being overruled, saved exceptions. The trial court very properly based its rulings upon the case of **Pavilonis v Valentine, 120 Oh St 154.**

After the trial of the instant case, the Supreme Court, in the case of **Vega, Administrator v Evans, 128 Oh St, 535** (also published in Ohio Bar Association Reports, under date of August 6, 1934, page 535) overruled the Pavilonis case. Syllabus 3 reads as follows:

"3. It is error to permit the examination of a prospective juror on his voir dire as to his connections with, interest in, or relation to any liability insurance company as such unless such insurance company is party to the litigation or unless it has heretofore been disclosed to the court by such company or by the defense that such insurance company is actively and directly interested in the litigation. (Paragraph 3 of the syllabus of Pavilonis v Valentine, supra, overruled)."

At the time of the decision of the Vega, Administrator, case, error proceedings had been perfected in this court by plaintiff in error. On application for diminution and by consent of counsel the following was added to the bill of exceptions:

"After this case was called for trial before this court and before the examination of the prospective jurors on their voir dire, it was disclosed to the trial judge by the defendants in certain negotiations for settlement in chambers that liability insurance company was actively and directly interested in the litigation. Signed Robert P. Duncan, Trial Judge. Stipulated by the parties that this correction of the bill of exceptions be made."

It is the claim of counsel for plaintiff that this amendment of the bill of exceptions cured the apparent error, since it now appears that before proceeding to trial it was disclosed to the court in chambers that an insurance company was "actively and directly interested in the litigation." In the opinion, by Wilkins, J., at page 540, appears the following:

"At the outset it should be noted that if a casualty or liability insurance company is actively or ostensibly engaged in the trial—that is, if it enters its appearance as a nominal party, or in open court discloses active interest in the case—then there is no dispute as to the propriety of inquiring of jurors as to their interest in or connection with such company."

We recognize that the law of the case is stated in the syllabus, but it is common practice to examine the opinion as an aid to the proper interpretation of the syllabus. As we view it, the two lines of thought on this question are well defined, one being that the jury should not be advised by insidious interrogations in the voir dire examination that possibly and probably an insurance company will pay any damages awarded by the jury in their verdict.

The other follows the philosophy that since an insurance company may be directly and actively interested in the defense, inquiry should be permitted of the jury panel as to any possible interest in a liability insurance company either as stockholder or employe.

The majority and dissenting opinions in both the Pavilonis, supra, and the Vega, Administrator, supra, cases so fully discuss the two lines of thought that there should be no difficulty in determining the principle and its scope as announced in these two cases. Of course, the Vega, Administrator, supra, being the last case, it is our duty to follow it.

Counsel for plaintiff in the instant case argue that it now appears from the amend-

ed bill of exceptions that the trial court was advised that an insurance company was actively and directly interested in the case. It is proper to say that when the trial court calls counsel into his chambers, before starting a trial, in an effort to effect a settlement, and there learns that counsel for defendant is representing an insurance company, that this is the disclosure contemplated in the third syllabus of Vega, Administrator, supra. The fact is that the judge, in his effort to bring about a settlement, is not acting as a court and any disclosure made in chambers are not made to him as a court. This is true notwithstanding the fact that counsel know that this same judge will later be the acting trial court, if settlement is not made and the trial proceeds. It very frequently happens that the judge in chambers by the mere suggestion of settlement brings the parties to a discussion that leads to a settlement. Such action of the judge is purely voluntary and not recognized in court procedure. It is a commendable action on the part of the judge and should not be so construed as to prevent litigants and counsel from accepting his suggestion and aid in furtherance of settlement for fear that anything said in his chambers would be incorporated in the record, if, perchance, no settlement was made and the case proceeds to trial.

Under this last pronouncement of the Supreme Court we are constrained to the conclusion that the interrogation of the jury in the instant case was erroneous and prejudicial.

Counsel for plaintiff argue at great length and very persuasively, that this decision of the Supreme Court should not be given a retroactive operation.

The trial court at the time of the trial of the instant case followed the law as it then existed with the pronouncement of the Pavilonis case, and this court generally only reviews errors committed at the time of the trial.

However, the general rule is that where a principle is changed by judicial decision the new ruling operates both prospectively and retrospectively.

Sidney v Cummins, 93 Oh St, 228.

Vol. 11 O. Jur., (Courts) §140, page 790.

This same §140 also discusses exceptions to the rule. These exceptions would not include the instant case.

Another controlling argument against the contention of plaintiff is the fact that the Supreme Court in the Vega, Administrator, case did not attempt to limit to prospective application.

In the case of **Werner v Rowley, 129 Oh St, 15 (OLR Jan. 7, 1935)**, the Supreme Court reversed and remanded to our court with instructions to determine the case on the weight of the evidence.

Following the positive pronouncement in two previous decisions of the Supreme Court, we had refrained from considering the question of the weight of the evidence for the reason that in the prior trial in the Common Pleas Court of Montgomery County the cause had been reversed on the weight of the evidence and we were reviewing on the second trial. The statute specifically holds that the trial court can not reverse more than once on the weight of the evidence, and by judicial decree the Supreme Court had previously held that the Court of Appeals could not thereafter consider the weight of the evidence.

### SECOND GROUND OF ERROR

2. The court erred in refusing to direct a verdict for the defendant at the close of all the evidence in the case.

The answer of the defendant averred that the plaintiff's riding on the fender of the roadster was in direct violation of §1268 of the Ordinances of the City of Columbus, Ohio, and thereby he was guilty of negligence as a matter of law. The ordinance was introduced in evidence and supports the averment of the answer.

Counsel for plaintiff argue that even if plaintiff's position on the fender of the car was in violation of a city ordinance and thereby negligence per se, that under the facts of the case it could not be regarded as a contributing or proximate cause of the accident and resultant injuries.

Counsel for defendant cite the following cases in support of their claim of contributory negligence as a matter of law:

**Railway Company v Skinner, 127 Oh St 69;**

Wiese v Bolzer, 148 NW, 113;

Jennings v Delaney, 224 N. Y. S., 361;

Shawaker v Harvey, 139 Atlantic, 495;

**Farrell v Roche, 6 Oh Ap, 93.**

The above cases are all in point on the question of contributory negligence.

The subject of giving application to the question of proximate cause, where negligence is shown either by conduct or per se, is very fully and interestingly discussed in **Volume 29 Ohio Jurisprudence (Negligence) §40, page 432.** In the text it is pointed out that there is a distinction between the violation of an ordinance which results from active conduct and the violation of an ordinance which results from passive con-

duct. Counsel urge that plaintiff's being on the fender did not operate actively as a cause for the accident and resultant injuries.

While recognizing the nice distinction under certain state of facts, we are constrained to the view in the instant case that plaintiff's position on the fender of the car operated actively to bring about his injuries. None of the occupants on the inside of the car were injured. Plaintiff was not only violating the city ordinance, but, in fact, was occupying an improper and dangerous position on the car. The case of **Seccombe v Slicker, 37 Oh Ap, 389**, is cited, but the only similarity to be found is the fact that the plaintiff was standing on the running board in violation of a city ordinnace. The verdict was for the defendant. It does not appear from the record that the question here involved was raised or considered. Later the case, under the same title, but being an action by the husband for loss of services, reached the Court of Appeals and appears in **42 Oh Ap 357 (12 Abs 507)**. In the latter case, verdict was for the plaintiff. This verdict and judgment were reversed by the Court of Appeals. The record discloses that during the trial the petition was amended so as to raise the issue of wilful and wanton negligence. At page 362 of the opinion, we find the following:

"It devolved upon the plaintiff to prove two things: First, that the defendant was negligent in some one particular; and, second, that in such act or omission he had perpetrated a wilful and wanton tort."

Judge Sherick, in his opinion at page 359, refers to the amendment of the petition so as to charge wilful and wanton negligence and the apparent reason therefor to avoid the "dead fall ahead." This expression immediately follows the narrative of the overruling of defendant's motion for a directed verdict upon the pleadings and trial statements. It was held in the Appellate Court that the trial court was not in error by reason of the fact that plaintiff's reply denied the averments of the answer claimed to constitute negligence per se, and hence it could not be said that the undisputed facts would warrant sustaining the motion.

Since the submission of the case there has been presented to us by counsel for defendant a supplemental memorandum citing the case of Hinch v Elliott, (Conn.), 175 Atlantic Reports, 684. This is a very recent case and is analogous in its facts to the instant case. The holding of the court was that the guest who sat on the front fender was guilty of contributory negligence as a matter of law, and thereby barred from recovery.

While not intending to commit my associates to the following, the writer is inclined to the view that this ground of error is well taken for the further reason that under the uncontradicted evidence there is a failure to establish negligence on the part of the defendant which, under the law, could be construed to be a proximate cause of the accident.

While the vehicle on which plaintiff was riding was approaching from the right of the moving van, and thereby would have a qualified right of way, yet there is no conflict in the testimony that the van was well across this intersection before the roadster was in sight. The testimony of the driver of the bed spring truck, who was in front of the roadster upon which plaintiff was riding, is to the effect that he did not see the moving van at all until he was at the edge of the underpass, and at that time it was well across the intersection. The testimony of all the occupants of the roadster is to the same effect. Under the law, this would give the van the right of way and it was entitled to clear before the eastbound traffic on Leonard would have rights at the intersection.

There is an absolute failure of evidence on the claim that the driver of the van failed to yield the right of way. On the contrary, the evidence is conclusive that he did have the right of way.

Considering the other question, to-wit, that he stopped suddenly without giving warning, in violation of the statute, I am unable to bring myself to conclude that this statute has application in a state of facts such as is shown in the instant case. Primarily this provision of the Code prohibiting stopping without warning is for the protection of traffic following the rear, although under varying circumstances it may be given application to other situations. For instance, if the driver of this van was seated on the left hand side of his vehicle, there was no possible way that he could give warning to the traffic approaching from the west that he intended to stop. The stop lights operated by the brake, are always on the rear of the vehicle and not on the side. Traffic moving west on Leonard Avenue was entitled to the north side of this street and the driver of the van would be in position by hand signal outside his cab to give notice of intention to stop. The driver of the van in the exercise of

ordinary care would not be charged with the obligation to anticipate that the driver of the roadster would endeavor to skid past the rear of his car on the wrong side of the road. It was a warm, dry day and a hard surfaced road with soft gravel at the outer edge. It was not necessary to drive on the soft gravel, there being adequate room on the hard surface. To my mind the conclusion is irresistible that the driver of the roadster was guilty of gross negligence in operating his car at such a speed that it skidded somewhere between 36 and 75 feet, and could not be brought to a stop. The rule against imputed negligence is well recognized, but in my judgment the only negligence shown under this record is the gross negligence of the driver of the roadster and the contributory negligence of the plaintiff.

Hrovat v Cleve. Ry. Co., 125 Oh St, 67, 74, 75.

Cleveland Ry. Co. v Barragate, 125 Oh St, 190-192.

Gedeon v East Ohio Gas Co., 128 Oh St, 335-339 (190 NE, 924, 926).

The further fact should be noted that this boy Ted, the owner and driver of the roadster, was not available or called as a witness. Statement was made at the time of the trial that he was in the "old country."

Leonard Street runs practically due east and west and intersects Woodland at right angles. From the plat presented in evidence and further evidence as to the topography of the ground, there is no reason why the driver of the roadster, had he been looking, could not have seen the van crossing the street in plenty of time to have brought the car to a stop.

It is our conclusion that the court was in error in refusing to direct a verdict for the defendant at the close of all the evidence in the case.

#### THIRD GROUND OF ERROR
"3. The verdict is against the manifest weight of the evidence."

In view of our conclusions on the second ground of error, comments on this third ground would be unnecessary except as the case · may be reviewed in the Supreme Court.

There being no conflict in the evidence upon which we determined that the plaintiff is guilty of negligence as a matter of law which directly contributed as a proximate cause of the accident and resultant injuries, it necessarily follows if we are in error in this conclusion then in that event it could not be determined that the verdict in this particular would be against the manifest weight of the evidence.

The same observation would apply as to the second ground upon which the writer concludes that the trial court should have directed a verdict in favor of the defendant at the close of all the testimony.

Now coming to enter the judgment that should have been entered in the court below, judgment is entered for defendant and against plaintiff.

Judgment will be entered against plaintiff for costs.

Exceptions will be allowed.

Entry may be drawn in accordance with this opinion.

HORNBECK, J.

I concur in the determination of the second and third claims of error as discussed in the opinion and in the judgment.

I dissent from the determination as to the first claim of error and to the proposition that there is no evdence in the record of negligence of the defendant company.

KUNKLE, PJ.

I concur in the judgment herein for the reasons discussed in the first, second and third grounds of the opinion herein.